No. 34,881

The State of Kansas, ex rel. Jay S. Parker, Attorney General, etc., *Plaintiff*, v. Charles D. McKnaught, Chief of Police of the City of Topeka, *Defendant*.

(107 P. 2d 693)

Opinion filed December 7, 1940.

*Jay S. Parker,* attorney general, *Morton B. Cole* and *A. B. Mitchell,* assistant attorneys general, for the plaintiff.

*Harry W. Colmery* and *Lester M. Goodell,* both of Topeka, for the defendant.

The opinion of the court was delivered by

Smith, J.: This is an action in quo warranto brought by the state on the relation of the attorney general whereby the state seeks to oust the defendant from the office of chief of police of the city of Topeka. When the action was filed the state asked that the defendant be temporarily suspended from office pending the final outcome of the action. The motion to suspend was allowed and he was suspended.

After the answer was filed a commissioner was appointed by this court to hear evidence and make findings of fact and conclusions of law. The commissioner proceeded to hear the evidence. He made findings which, with one or two exceptions, were favorable to the defendant. His conclusions of law were that the defendant be not ousted and that the costs of the action be taxed against the plaintiff.

The plaintiff has filed a motion for judgment notwithstanding the findings and conclusions of the commissioner and exceptions to his findings and conclusions. The defendant has filed a motion for judgment upon the commissioner's findings and conclusions. The hearing in this court was upon these motions.

In actions such as this the findings of fact made by the commissioners are advisory only and do not have the effect of finality that is awarded findings of a trial court. The motions to which reference was just made make it the duty of this court to examine the whole record and reach its own conclusion as to the facts. (See *Hunt v. Gibson,* 99 Kan. 371, 375, 161 Pac. 666; *State, ex rel., v. Buchanan,* 142 Kan. 515, 51 P. 2d 5; also, *State, ex rel., v. Duncan,* 134 Kan. 85, 4 P. 2d 443.)

It should be noted that the commissioner found that the defendant entered upon the duties of chief of police without having had any previous experience in that line of work; that he proceeded to reorganize the department pursuant to an ordinance of the city. The commissioner also found that various changes made pursuant to this ordinance and the subsequent reorganization under defendant had resulted in an improvement of the operation of the police department.

The petition charged first that defendant willfully misconducted himself in office in that he failed to preserve certain intoxicating liquor which was evidence in the case of *State v. Cooney,* tried in the district court of Shawnee county, and that he gave some of this liquor to certain persons during a convention of Kansas peace officers; and that defendant required the payment of money by persons violating the gambling and intoxicating liquor laws of the state in return for immunity as to these operations.

The commissioner in his report recited the evidence with reference to the Cooney liquor, and found as a matter of fact that while there were discrepancies in the evidence with reference to this liquor there was not sufficient evidence that the liquor which was in the hands of the sheriff at the time of the hearing was not the same liquor that was taken in the raid, or that the defendant destroyed any of it or permitted its withdrawal, and that the evidence did not sustain such a charge.

The state asks us on this point to reëxamine the record and, following the rule announced, reach a different conclusion as to the facts than was reached by the commissioner. Mindful of our duty in this respect, we have gone through this record. We are unable to reach a different conclusion as to the facts than was reached by the commissioner.

In connection with the above finding the commissioner made a finding as to the charge that defendant had disposed of some of the

Cooney liquors by dispensing them to persons during the meeting of the peace officers'.. convention. This finding will be dealt with later in this opinion.

The next charge against the defendant with· which we shall deal is that during his present term of office he required the payment of money to be made by persons violating the gambling and intoxicating liquor laws of the state in return for immunity as to these operations. On this · charge the state introduced the evidence of various persons who had been active in the campaign of the mayor of the city, and who later appointed the defendant chief of police. There was no testimony on the part of anybody that they paid money to defendant nor was there any evidence that defendant told any of the persons who are alleged to have paid this money that they could carry on any unlawful operations. The ·evidence as to these payments was objected to on the ground that it was hearsay and not binding on the defendant. In this connection the commissioner in his report found that this objection should have been sustained and that the evidence was incompetent and should not be considered.

The· state does not argue here that this ruling on the admission of evidence was wrong. Moreover, the question is of no importance, because, even should this evidence be considered, we find that it is not sufficient to cause us to reach a different conclusion than that reached by the commissioner, which was that the evidence did not show anything to connect the defendant with any payment of money for the purpose of granting immunity from law violation, or for any other purpose in connection with the performance· of his official duties, or that he knew any other person had so received any money.

The next charge made against the defendant is that he willfully neglected to perform certain duties in that he failed to enforce the laws of the state with reference to intoxicating liquors, although he had direct knowledge of such violations, and that he ordered the police department not to arrest or interfere with the possession, sale or transportation of intoxicating liquors except to such persons as he should name from time to time. This charge turned in a large measure upon instructions alleged to have been given certain subordinate officers by defendant as to the manner in which he wished them to handle the work of· enforcing the law with reference to liquor traffic. The commissioner set this evidence out somewhat at length and found in effect that while there might· be difference in

opinion as to whether the course followed by defendant in these cases was a proper course it was a question which was within the discretion of the defendant as chief of police. The commissioner further found that in taking the course of action he did take he acted in good faith and was not guilty of any misconduct in connection with the procedure which was adopted.

The state asks us to examine the record in this connection and to reach a different conclusion as to the facts than that reached by the commissioner. We have examined the record and we conclude that the finding of the commissioner is sustained by the evidence. In the absence of a positive showing of bad faith this court cannot hold that the police officer is bound to operate in a particular manner in conducting the arduous and difficult task of enforcing the prohibitory law. On account of its particular nature the methods and practices of those charged with the duty of enforcing these laws must of necessity be flexible. A certain amount of discretion rests with the head of a police department. We do not find that this discretion was abused or that the defendant was guilty of bad faith in the exercise of it.

The next charge with which we shall deal is that on a definite day defendant refused to allow the issuance of a search warrant in connection with the sale of intoxicating liquor at 500 Locust street in the city of Topeka, upon which premises there were intoxicating liquors in possession of one Mobely. The evidence as to this charge is that when one of the subordinate officers asked defendant for a warrant to raid the place on Locust street without giving the address or the name of the person alleged to be operating the place the officer was sent on some errand before he received the warrant, and that while he was gone on this errand there was a call made to the person in possession of the liquor that he was about to be raided, and that when the officer came back from the errand a call had been made to police headquarters that the liquor was being moved and that this officer rushed out immediately with the warrant and arrested the person for whom the warrant was asked a little distance from the address given.

The commissioner reviewed all the evidence on this point and found that defendant had not been told the location on Locust street, for which the warrant was issued, or the name of the man who was being sought. The two mysterious telephone calls were referred to by the commissioner, and he found there was no evidence

whatever connecting the defendant with these calls, and that no misconduct whatever was shown with reference to this transaction.

The state asks us to examine the record in this case and to find that the subordinate officer was not sent upon the errand in good faith, but that it was a ruse to give defendant an opportunity to have the person in possession of the liquor warned and that this constituted misconduct on the part of the defendant. We have examined the record on this point. While there were some suspicious circumstances connected with the entire transaction, we cannot find from the evidence that it would warrant a finding that the chief had anything to do with these telephone calls being made in view of the fact that there is no evidence in the record that the defendant knew the name of the person for whom the warrant was issued or the place where he was supposed to have it.

The next charge against the defendant is that he failed and refused to enforce the law of the state with reference to gambling and the operation of gambling establishments although he had knowledge of various gambling operations. Most of the evidence upon this point turns upon the operation of policy games in Topeka and the efforts of the police officers to enforce the laws with reference to these operations. In this connection the evidence shows that there was a difference of opinion between two officers as to the better method to be pursued with reference to policy games. The entire business is of a very fugitive nature. The practice is for a salesman to sell chances on a policy wheel to a great many different people for a small sum. They usually operate amongst the poorer class of people. Then each day a drawing is had which requires very little equipment. The evidence as to this particular case turns largely upon a policy wheel which was operated at a certain address. One of the officers testified that he told the chief that the wheel was to be at a certain address, and that just before leaving headquarters he discovered it was to be at a different address than the one he gave defendant, and that he went to the changed address and apprehended the people conducting the game.

The commissioner set out in a general way the evidence as to the operation of policy games in Topeka, especially in the particular case to which reference has been made, and refused to find that the defendant or the police department had been guilty of willful failure to enforce the laws against gambling. The plaintiff asks us to consider the entire record and to arrive at a different finding as to the

facts than that reached by the commissioner. We have examined the record in this respect and we have concluded that there was not sufficient evidence to warrant any other finding than that reached by the commissioner on this point.

The next charge made by the state is that the defendant failed to enforce the laws of the state with relation to the maintenance of houses of prostitution although he had knowledge of such practices; that he called upon various owners and operators of houses of prostitution and talked to them about their operations, but failed to take any action for the cessation of such unlawful practices; that on one occasion he visited persons operating houses of prostitution, telling them not to allow red lights in their windows and telling them that the women should not sit in the windows where they could be seen from the streets. The evidence upon this point turns upon a visit that defendant made to various rooming houses, largely upon lower Kansas avenue, in company with two of his subordinate officers and with newspaper reporters from each of the daily papers published in the city. The evidence shows that the defendant talked with those in charge of these rooming houses and that he said he was just looking around and wanted the women to keep out of the windows. There is also evidence that the defendant directed one of the officers to notify the proprietor of a place on Kansas avenue to turn off a red Neon sign in front of her window. On this point the commissioner found that while it may have been a breach of good judgment to visit some of these rooming houses yet the circumstances of the visit and the nature and character of the people who were with him were such that he could not find defendant was guilty of willful misconduct in connection with his visit.

The state asks us to reach a different conclusion as to this fact than that reached by the commissioner. While these places were referred to in the evidence as houses of prostitution, the evidence does not show that they were actually houses of prostitution or that defendant knew they were houses of prostitution. In their very nature they could be operated as legitimate rooming houses or they could be operated as houses of prostitution. We do not put our stamp of approval on visits of this kind by law-enforcement officers to places that are so operating. The bad feature about this visit, as we see it, is that it indicates that defendant had an idea as a law-enforcement officer that the proper way to handle the problem of

commercialized vice in the city was to keep the women of easy virtue off the streets and out of the windows and out of sight generally, but to condone the operation of houses of prostitution as long as the inmates did not offend against the proprieties. Such an attitude might appeal to a hard-boiled police officer who contends with such things every day and gets into a frame of mind where he faces such things in a realistic manner. It is not, however, the attitude which the people of the state speaking through the governing bodies of cities and the state legislature have laid down for their law-enforcement officers to take. They will be satisfied with nothing less than a stern, uncompromising attitude toward all forms of organized vice. One who takes a position as law-enforcement officer of any kind must make up his mind to adhere to this policy. We have concluded, however, that this visit in and of itself does not warrant a judgment of ouster against the defendant.

This brings us to the charge made in the petition that defendant disposed of some of the so-called Cooney liquors by giving them away and dispensing them to persons during the Kansas peace officers' convention held in Topeka. The commissioner, in connection with his findings as to the Cooney liquor, found as follows:

"(p) The Kansas Peace Officers' Convention was held in Topeka during the month of October, 1939. The defendant was chairman of the town committee conducting the convention. There were many other committees, the members of which were connected with various civic organizations in Topeka. The estimated attendance at this meeting were several hundred, and consisted largely of persons engaged in law-enforcement work in the various parts of Kansas. The meeting lasted three days and appears to have been largely attended.

"(q) One of the hotels in Topeka was named as convention headquarters. In consideration for this designation the hotel furnished some rooms for the use of those attending the convention. The defendant had to do with the making of arrangements with the hotel, and from time to time, during the three-day session of the convention, the defendant was in these rooms together with others who were there attending the convention. During this time some liquor was served in these rooms. There is no evidence whatever that any of what is called the 'Cooney liquor' was brought to those rooms or that the defendant had anything whatever to do with the furnishing of any liquor. He was, however, in the rooms at various times and saw others there drinking liquor. There is no evidence that the defendant himself drank any liquor there or had any part in connection with the rooms except as stated herein.

"(r) The presence of defendant in these rooms at this time was wrong and was a violation of his duty. It does not appear, however, that in so doing there was any wrongful motive upon his part, but that he, with the others

present, entertained a mistaken idea of hospitality for the visitors at the convention. While not condoning the acts of the defendant in this regard, I cannot find that this occurrence alone warrants a finding that he is guilty of such willful misconduct as would require his removal from office."

Did the conduct of the defendant set out in the above findings constitue grounds for ouster? The commissioner thought not. We must start our consideration of the question by remembering that this incident occurred in the city of which defendant was the head of the police force. He was charged with the duty of directing the enforcement of all the laws of the state and ordinances of the city. When he saw drinks containing intoxicating liquors being served there in the hotel room he knew that some one had violated the law by bringing the liquor there and someone was violating the law by having it in his possession. There is no way intoxicating liquor may be served in Kansas without the law being violated in two or three particulars. The duty of the defendant was clear under the circumstances. He should have taken steps immediately to arrest and cause the prosecution of those persons guilty of these violations. This may seem like a harsh rule, but defendant assumed this duty when he took the oath and qualified as chief of police. The legislature of the state and governing body of the city have passed on that situation. There is a discretion to be exercised, but that discretion is reposed in these bodies. They have left no room for the exercise of discretion on the part of officials charged especially with the duty of seeing that the laws are enforced.

Defendant presses upon our attention the rule laid down by this court in *State v. Trinkle,* 70 Kan. 396, 78 Pac. 854; *State, ex rel., v. Foley,* 107 Kan. 608, 193 Pac. 361; and *State, ex rel., v. Wilson,* 108 Kan. 641, 196 Pac. 758. In those cases this court laid down the general rule that an officer must be accorded a reasonable discretion in directing the business of his office, and some scope must be conceded to him for the exercise of his best judgment in respect to any matters committed to his charge. He argues that this is a case where that rule should be invoked and that in the absence of any showing of corrupt motive on the part of defendant this incident is not grounds for ouster. Defendant states in his brief that "the people do not want 100 percent law enforcement of the law. . . ." "Many different and double standards prevail." The trouble with that argument on the part of defendant is that it would allow each law-enforcement officer to decide when the law should be enforced

and when it should not be enforced. Neither the governing body of the city nor the state legislature have conferred any such discretion on defendant. Such discretion has not been conferred on this court. There is more to the incident than the mere fact that some one consumed a drink containing intoxicating liquor while defendant was in the room. Some significance must be given the fact that the other people in the room who were drinking went right ahead with their drinking and mixing drinks while he was there. This establishes at least a tacit consent on the part of defendant that the liquor should be there in the possession of somebody.

This conduct our commissioner found to be wrong and a violation of defendant's duty. It was passed over, however, with the statement that there was no wrongful motive on the part of defendant, but merely a mistaken idea of hospitality. We are unable to treat the matter so lightly. We have concluded that it was misconduct on the part of defendant, which requires a judgment of ouster.

The judgment of this court is that defendant be ousted from the office of chief of police of Topeka, Kan.

HARVEY, J., not sitting.

ALLEN, J. (dissenting): I think the findings and conclusions of the commissioner appointed by this court should be approved in all particulars.