No. 35,742

GEORGE P. BRADLEY and RICHARD E. MONK, *Petitioners*, v. MILTON F. AMRINE, Warden of the Kansas State Penitentiary, *Respondent*.

(141 P. 2d 380)

Opinion filed October 2, 1943.

*Raymond Briman,* of Topeka, argued the cause for the petitioners.

*Shelley Graybill,* assistant attorney general, argued the cause, and *A. B. Mitchell,* attorney general, was on the briefs for the respondent.

The opinion of the court was delivered by

SMITH, J.: This is a habeas corpus action wherein two petitioners ask that the warden of the Kansas State Penitentiary be directed to release them from custody.

The case was presented to this court at the December session of 1942. A reputable member of the bar of Shawnee county had been appointed by us to represent the petitioners. At the oral argument it appeared that a petition for a writ had been filed in Leavenworth county and that the writ had been denied. The petitioners had attempted to appeal from the judgment of the district court of Leavenworth county and in the meantime had filed an original application for a writ in this court. The attempted appeal and the original petition came on to be heard at the same time in this court. It appeared at that hearing that no proper record had been made of the proceedings in the district court so that no review could be had of the action of that court. It further appeared that there was a question of fact in the original petition which would require the taking of evidence.

The petitioners had alleged in their petition in the original proceedings in this court that they had requested counsel at the time they pleaded guilty and that their request had been denied.

It is well settled that an accused may properly plead guilty to a criminal charge without the advice of counsel in the absence of request from him for counsel. See *Parks v. Amrine,* 154 Kan. 168, 117 P. 2d 586; *Jones v. Amrine,* 154 Kan. 630, 121 P. 2d 263; *Brewer v. Amrine,* 155 Kan. 525, 127 P. 2d 447; *Oller v. Amrine,* 155 Kan. 703, 127 P. 2d 475, and *Garrison v. Amrine,* 155 Kan. 509, 126 P. 2d 228.

The question of fact, then, was whether petitioners had been denied counsel at the time they pleaded guilty in the district court of Wyandotte county about August 5, 1936, or whether they had waived their right to counsel or, stated in another way, whether they had requested counsel at the time they pleaded guilty.

Since the petitioners were destitute and no effective order could be made requiring them to advance any part of the expenses attendant on a hearing before us, we decided to assign one of our members to hold hearings in the case and gave him authority to subpoena and swear witnesses and do all other things necessary in conducting the hearing as to the facts in the original proceedings.

Accordingly a justice was assigned to do these things. He held one hearing on February 20, 1943, at the penitentiary at Lansing, Kan., and one on April 12, 1943, at the Wyandotte county courthouse in Kansas City, Kan. An assistant attorney general represented the respondent. The transcript of the testimony of the witnesses who testified at these hearings was made at the expense of the attorney general. This transcript was made available to counsel for the petitioners, has been on file with the clerk of this court and has been examined by us. The case was set down for argument on the merits before the entire court at the July session. We examined the transcript of the evidence and read the briefs of the parties.

The petitioners pleaded guilty about August 5, 1936, to three charges of robbery in the first degree and were sentenced to be confined in the penitentiary at Lansing for terms of from ten to twenty-one years on each charge, the sentences to run concurrently. They were taken immediately to the penitentiary and have been confined there ever since.

It should be stated at the outset that the question of what happened in this case was rather difficult to determine due to the fact that the prosecution seems to have been handled by two detectives of the Kansas City, Kan., police force, both of whom are now dead, and the judge who sentenced them is also dead.

At the hearing in the office of the warden of the penitentiary at Lansing the two petitioners, George P. Bradley and Richard E. Monk, each testified. Katie Bradley, the mother of petitioner Bradley and the aunt of petitioner Monk, and Mary Garcelon, who is the sister of George Bradley and a cousin of Richard Monk, also testified for the petitioners. For the respondent, John J. Bukaty, who at the time of the plea was deputy clerk of the district court and at the time of testifying was assistant county attorney, and T. P. Palmer, who at the time of the plea was assistant county attorney, both testified.

Bradley testified that at the time they were arrested he lived with his mother in Kansas City, Mo., and Monk, his cousin, lived with them; that he had served a term of from one to ten years in the Missouri State Penitentiary for highway robbery; that he had been out on parole for about seven months when he was arrested in this case; that he had also served two months in the reformatory in Colorado for car theft; and he had been arrested in Kansas once for carrying a concealed weapon; that at the time of the hearing he was thirty-one years old; that he had been in the penitentiary about six and one-half years, so he was about twenty-four or twenty-five years old when he was sentenced.

Monk had also served five years and ten months in the Missouri penitentiary for first-degree robbery with Bradley and was also with him at the time he had the trouble about the gun.

Both of these men were employed at the time of their arrest on the charges upon which they are now incarcerated. One was driving a truck for a moving company and the other was driving a delivery wagon for the Jones department store. They had both just about reached the sixth grade in school and had been raised in Kansas City, Mo. They were arrested in a picture show in Kansas City, Mo., about eight o'clock at night by the Kansas City, Mo., police officers. These officers told them they were wanted for robbery in Kansas City, Kan. They waived extradition and were taken to Kansas City, Kan. There they were turned over to two detectives, William McMullin and Mr. Downs. Bradley testified that these detectives accused them both of highway robbery and that when they denied being guilty started beating them up. He swore they were not allowed to talk to anybody but that their folks found they were there and came to see them. He testified they asked McMullin for an attorney and McMullin told them all they

needed was a good killing; that they were taken to a room where some people looked at them and said, "This is them;" that they were taken to Judge Miller's courtroom to what they thought was a preliminary hearing; that the judge was the only one in the courtroom when they were taken there; that about the time they entered the room Bradley's sister and mother and brother came into the room and Bradley asked the judge for an attorney and the judge made some wisecrack about it and said, "How are these boys pleading?" and the detective McMullin said, "They are pleading guilty, Your Honor, and I recommend ten to twenty-one years," and that the judge then said, "Ten to twenty-one years." He testified that Bradley's sister said, "Your Honor, I wish to speak to you a minute," and the judge left the room and the detectives grabbed her and pushed her out of the courtroom; that at the time they were sentenced Bradley did not know anything about what he was charged with or why he was there; that he told his mother he had been sentenced to prison and asked her to get a lawyer; that the next day a lawyer came to him and said he would take the case for $300; that he had no money and never heard anything more from this lawyer and six days later they were taken to Lansing.

On cross-examination he denied that he was taken into a courtroom where he waived his preliminary examination.

Monk's evidence was to about the same general effect.

They both testified they had been in some trouble in the Kansas penitentiary since they had been there on this sentence and that this trouble had been such that they had been denied their usual good time allowance. Were it not for this they, each of them, would be eligible for a parole by this time.

Katie Bradley, the mother of petitioner Bradley, testified that the day after the boys were arrested she came to Kansas City, Kan., and saw the boys; that they had been beaten up terribly and the detectives told her her son had an incurable disease and that they were in trouble for stealing harness; that when they went in the courtroom the judge was sitting on the bench and there wasn't anybody else there except herself, these two detectives, the two boys and her daughter and her son; that one of the detectives that brought the boys here said to the judge, "I recommend ten to twenty-one years" and the judge said, "Ten to twenty-one years;" that Bradley said, "Give us a lawyer, judge," and the detective said,

"They don't need a lawyer" and the judge paid no attention, and that her daughter saw a lawyer named White.

Mary Garcelon testified that she was a sister of George Bradley and a cousin of Richard Monk; that she was born and reared in Kansas City; that she went to see them the day after they were taken to the city jail in Wyandotte county and when she saw them in jail they were bloody from their knees to their ankles and that when Bradley asked the detectives to furnish a lawyer the detectives said, "You don't need a lawyer, all you need is a good killing;" that she went to the prosecutor's office and asked to see the prosecutor and a man went into another office and came back and said, "Sorry, the prosecutor will not be able to see you;" that they had been told they would have a preliminary hearing the next morning so they were pretty sure the boys would be released; that the boys were taken to the courtroom where they saw an old judge who "didn't seem to be all there somehow;" that the judge said, "Guilty or not guilty;" and when her brother started to speak he said, "I certainly want a lawyer, Your Honor;" that one of the detectives said, "These men plead guilty and I recommended ten to twenty-one years;" the judge then said, "I sentence you to ten to twenty-one years;" that the judge paid no attention when her brother asked for a lawyer and she said, "Your Honor, may I speak to you a minute?" that he completely ignored her and the detective grabbed her and took her out of the courtroom; that that was the last time she saw her brother and cousin until they were in the penitentiary; that afterward she talked to a lawyer and he said he would take the case for $300; that she did not have the $300 and did not know what happened.

The affidavit of the brother of Bradley as to what happened was offered and it was agreed by the parties with the approval of the justice that this affidavit should be treated as though the brother had actually appeared before the justice in person and testified. This affidavit was to the same general effect as that of the other witnesses.

The foregoing about completes the testimony for the petitioners.

The burden is on the petitioners to prove by a preponderance of the evidence that they were denied counsel and that they did not waive the right to counsel. The journal entry of judgment stated that they did not have counsel. However, the presumption is in

favor of the regularity of the court proceedings. (See *Johnson v. Zerbst,* 304 U. S. 458, 82 L. Ed. 1461.) The two petitioners being inmates of the pentitentiary, their testimony is subject to careful scrutiny because it is apparent that they would go to great lengths in their testimony to secure their release. Furthermore, the penalty for perjury would hold very little terror for them. The mother and sister were interested witnesses.

The rule that certain matters must be proven by a preponderance of the evidence has received attention in law books from time to time. What it means is that the body charged with making the findings of fact, whether it be a jury, court or commissioner, must be convinced that the statement of facts for which the party upon whom the burden rests, is true. Sometimes a dozen witnesses may testify to a certain statement of facts, but if the tribunal charged with finding the facts does not believe any of these witnesses then that fact has not been established by a preponderance of the evidence. We have said many times that the court or jury is not required to believe the testimony of a witness merely because there is no direct evidence to contradict it. (See *Trustees of Baker University v. Farrar,* 134 Kan. 722, 8 P. 2d 343; *Peoples National Bank v. Diven,* 135 Kan. 400, 10 P. 2d 883; *Smith v. Lockridge,* 145 Kan. 395, 65 P. 2d 343; *Kallail v. Solomon,* 146 Kan. 599, 72 P. 2d 966; *Johnson v. Soden,* 152 Kan. 284, 103 P. 2d 812 and *In re Estate of Johnson,* 155 Kan. 437, 125 P. 2d 352.)

The story told by these witnesses, if it were believed by the court, would require a finding of fact that petitioners not only did not have counsel but that they requested counsel and it was denied them.

When they had finished putting on their evidence it appeared that it would be easy to find some official in the courthouse who was present when these events transpired. The statement of the assistant attorney general to the court, however, disclosed that the two detectives, whom the petitioners said had charge of their case and who took them into the courtroom for their plea, were dead. The judge who passed the sentence was dead. The county attorney himself had no independent recollection of the case whatever. This was not strange in view of the great number of cases that are handled by the office of the county attorney of Wyandotte county in the course of a year. The respondent, however, did offer the evidence of Mr. John J. Bukaty, who was deputy clerk of the district court in Wyandotte county at the time these pleas were made, and was

assistant county attorney of Wyandotte county at the time he testified. He also offered the testimony of Mr. T. P. Palmer, who was assistant county attorney at the time the pleas were entered, but had no official position at the time he testified.

These two men testified at the hearing in the warden's office at Lansing.

Mr. John Skwarlo, who was deputy clerk of the district court, division No. 1, at the time the pleas were made; Mr. Alan W. Farley, who was judge pro tem in the city court on that day, and Mr. William Armstead, who was also deputy clerk of the district court on the day the pleas were made—all three testified at the hearing held April 12, 1943, at the courtroom in Wyandotte county.

When a group of witnesses, all of whom are interested in the outcome of a case, testify to a certain state of facts it is not unusual to note that they generally agree as to details. The parties who have the burden of convincing the trier of facts that the story told by these people is not a correct one, where he has no direct evidence to the contrary, must rely on what evidence he has that casts doubt on the details of the story told by the interested witnesses.

However, Mr. Bukaty's testimony was to the effect that the entry in the journal of the court was in Judge Miller's handwriting, so that point was cleared up. The situation was complicated somewhat by the fact that these pleas were taken during August and there are four deputy clerks of the court, each one of them assigned to a division, and during vacation time they would work for each other—none of them was sure just who was in the courtroom at the time of these pleas. As a matter of fact, Mr. Bukaty was assigned to division No. 3 as deputy clerk while Judge Miller's division was No. 4. Mr. Bukaty testified that the handwriting in the trial docket page was that of John Skwarlo, who was clerk of the court assigned to division No. 4. All in all, Mr. Bukaty did not throw very much light on the truth or falsity of the testimony of witnesses for the petitioners.

Mr. Palmer testified that he was assistant county attorney at the time of these pleas. He testified that when a prosecution was begun in Wyandotte county it was assigned to one of the assistants and this assistant followed the case through from the time it was started until it ended. He also testified that a file was made in the office of the county attorney of all the papers that had to do with the particular prosecution. Each case had a number which applied

only to cases in the county attorney's office. He testified that certain notations on the jackets of the three cases involving these petitioners were in his handwriting. The entries were as follows:

"D's arraigned before Judge Pro Tem Allan Farley Div. # 2, waived preliminary—T. P. Palmer 8/5/36 D's Richard E. Monk & George P. Bradley and each of them present in person, upon arraignment pleads guilty to robbery in the first degree as charged in the information. Sentenced to Kansas Penitentiary for not less than 10 yrs nor more than 21 yrs at hard labor. Sentence to run concurrently with that in cause # 13322. T. P. Palmer 8/5/36."

He testified that this entry for case Nos. 13,322 and 13,323 and 13,324 were identical and written upon these jackets in his handwriting and that he must have been in the courtroom when he made these entries, because he never made such an entry unless he was in the courtroom at the time the arraignment was had and the plea entered. This evidence was important for the reason that all of the witnesses for the petitioners testified that no one was in the courtroom at the time these pleas were taken except the judge, the two defendants, the two detectives, Mrs. Bradley, Mrs. Garcelon and a brother of Bradley. This evidence of Palmer, therefore, tended to discredit the story told by the witnesses for petitioners in that respect. This witness also testified that he had an independent recollection of being in the courtroom at the time the sentence in this case was passed, but he would not say he had an independent recollection of what was said as to counsel.

It will be remembered the petitioners and their witnesses testified that they were taken directly to Judge Miller's courtroom from the jail and the events transpired with reference to a plea about which so much has been said. They testified that they thought they were being taken to have a preliminary rather than to plead. The petitioners and witnesses all denied categorically that they were taken into any court and offered a preliminary hearing or that they waived it. This made the evidence of the judge pro tem of the city court before whom they would ordinarily have been taken to have their preliminary very important. He testified at the hearing in the courtroom at Kansas City, Kan. He was handed the original warrant in these cases. He identified the warrants and identified a notation in his own handwriting as follows:

"Aug. 5, 1936 Defendants Arraigned. Defendants Richard E. Monk & George P. Bradley both plead not guilty, waive preliminary hearing, bond set at $2000.00 each & are bound over to District Court. Allan W. Farley, Judge Pro Tem."

Judge Farley testified that on account of a relationship he had with one of the detectives which caused him to look with suspicion upon the acts of this detective he took special care to ask any defendant whom this detective brought before him whether or not he desired counsel and that this was always done outside of the hearing and presence of the detective. He testified that he knew that procedure was followed in the case of these two petitioners because he never made any exceptions. This would be the natural thing to have happened, that is, that these defendants should have waived their preliminary before this judge before they were taken in the district court. It is borne out by the handwriting upon the warrant to which reference has just been made and also by the transcript of the proceedings in the city court, which are on file with the records of each one of these cases. It cannot be doubted that these petitioners did waive their preliminary hearing.

This bit of evidence is important because it contradicts the story of the petitioners and their witnesses that they were not given any preliminary and it also is convincing evidence that they were asked if they had counsel at the time of this arraignment and that they said they did not desire counsel.

In view of this testimony after an examination of these records we have concluded that the petitioners have not proved by a preponderance of the evidence that they asked for counsel and counsel was denied them when they pleaded guilty.

The writ is denied.