No. 35,914

FRED H. BISSELL, *Petitioner*, v. MILTON F. AMRINE, Warden of the Kansas State Penitentiary (ROBERT H. HUDSPETH as Warden, etc., Substituted), *Respondent*.

(155 P. 2d 413)

Opinion filed January 27, 1945.

*Erle Francis,* of Topeka, was on the briefs for the petitioner.

*A. B. Mitchell,* attorney general, and *Carl Ballweg,* assistant attorney general, were on the briefs for the respondent.

The opinion of the court was delivered by

PARKER, J.: This case is here on an application for a writ of habeas corpus by Fred Bissell, who for more than twenty-seven years has been and still is serving a sentence of life imprisonment in the Kansas State Penitentiary for the murder of Edna Dinsmore committed in April, 1916, in Shawnee county, Kansas.

The petitioner prepared and filed his own application and at different times amendments and supplements thereto. In addition he filed several replies to the answer and return of the respondent and we find in the files numerous letters to the court and to the commissioner. From an examination of any one instrument submitted by him it is impossible to ascertain all of the various grounds on which he relies for issuance of the writ. On that account we have examined carefully all of such instruments, and for our purpose will treat the allegations to be found therein as if they were incorporated in a single application. So considered the grounds relied on by him and set forth as the reasons why he should be discharged from the penitentiary are: Insufficient time for his attorneys appointed by the trial court to properly prepare his defense; separation of the jury at night during the trial; the reading of newspapers

by the members of the jury and the acquiring of other information regarding the facts of his case outside the courtroom; inadequacy of evidence to support and sustain the verdict of the jury; the execution of an application for change of venue which was forced upon him through fear and threats and without the benefit of counsel; continuous confinement in the isolation and punishment ward at the state penitentiary for more than two years, during which time he was denied the privilege of writing letters and receiving visitors and prevented by the warden of that institution from appealing his case to the supreme court.

In order for those who do not have access to the files to fully comprehend the issues thus presented by the petitioner, a general statement of facts, events and proceedings leading up to his conviction, sentence and incarceration appear to be necessary. We shall relate them as briefly as possible.

On or about the —— day of April, 1916, the dead body of a young girl, one Edna Dinsmore, was found in Shawnee county, Kansas, under circumstances which indicated she had been murdered and ravished. Shortly thereafter Fred Bissell was apprehended and a warrant was issued for his arrest, charging him with the offense of murder in the first degree. The crime was of such character public sentiment was aroused and it appeared the personal safety of the accused required that he be moved from the county of its scene. April 26, 1916, he was taken by the authorities to Lawrence, Kan., and during the evening of that day was moved to the Kansas State Penitentiary, where he was held without further action until March 30, 1917. On that date he was taken to Topeka where he waived his preliminary examination. Immediately an information was filed against him in the district court of Shawnee county. Thereupon he filed a verified application for change of venue alleging that the murder of Edna Dinsmore was committed in a brutal and horrible manner, such as to greatly excite the public and cause universal prejudice and ill feeling toward him; that feeling was so great a mob was formed which searched the Shawnee county jail and the jail at Lawrence, Kan., in an attempt to find and lynch him; that in order to escape such mob he was taken to the state penitentiary, where he remained until secretly brought into Shawnee county for the purpose of a preliminary hearing, the officers fearing mob violence if he should be openly brought before the court; and that the sentiment of the

citizens and inhabitants of Shawnee county was such that he could not there have a fair and impartial trial. The application for change of venue was promptly granted, the district court ordering the case transferred for trial to Wyandotte county, for the reason it appeared the defendant could not have a fair trial in Shawnee county. On May 3 following, the accused was delivered to the sheriff of Wyandotte county at the county jail in Kansas City, Kan. His trial was commenced in the district court of Wyandotte county on May 10 and was concluded on May 15, when a jury which had been duly impaneled and sworn to hear the cause returned a verdict of guilty of murder in the first degree. Sentence was deferred until May 26, on which date the court sentenced him to confinement at hard labor in the state penitentiary for life for commission of the crime of which he had been found guilty. The record of the proceedings appears to be full and complete. It discloses the petitioner was represented by two attorneys of Kansas City, Kan., both regularly qualified members of the Bar of this state and that in their effort to protect the rights of their client they filed and argued a plea in abatement, a motion in arrest of judgment and a motion for a new trial, each of which was overruled by the trial court. Bissell remained in the Wyandotte county jail until the 9th day of July, 1917, when he was taken to the state penitentiary and there confined in accordance with the terms of his sentence.

Petitioner's original application was filed in this court March 18, 1943. Thereafter, on June 21, Hon. Malcolm M. McNaughton, an outstanding attorney of Leavenworth, Kan., was appointed to represent him, and proceeded with the preparation of his case. For good and sufficient reasons Mr. McNaughton was unable to remain in the case until its final disposal. When that fact became apparent this court, upon his request, relieved him of the duties imposed upon him by his appointment and on April 20, 1944, appointed Hon. Erle S. Francis, a reputable and prominent attorney of many years practice of Topeka, as petitioner's counsel. The latter continued with the preparation of the cause and ably represented petitioner at the hearing before the commissioner and when it was finally submitted here.

Shortly after the appointment of counsel last referred to he advised, and our examination disclosed, the applicant's various pleadings raised an issue of material fact. Thereupon, the Hon. Lucien

B. Rutherford was appointed as commissioner with authority to subpoena witnesses, hear the evidence and make findings of fact to be reported in due course on the issuable question of whether there had been a denial of the right of appeal. Pursuant to that authority and on due notice to all interested parties the commissioner heard the cause, and after consideration of all evidence adduced at the hearing made and returned his conclusions of fact in which he specifically found the petitioner had not been deprived by the warden or any one else of the right to appeal from his judgment of conviction.

At the outset it should be stated the commissioner's findings were limited solely to the question on which he based his findings. His authority was properly restricted to that subject by this court. As has been indicated, other issues of fact were presented by the various pleadings, but they all pertained to alleged trial errors reviewable on appeal and were of such character they would not entitle petitioner to release unless he was successful in establishing his principal contention. Succeeding in that he would be entitled to the relief sought by him regardless of their merit.

It should also be noted that in original actions, including proceedings in habeas corpus, where a court has appointed a commissioner to hear evidence and determine issues of fact the findings made by such commissioner are advisory only, they do not have the conclusive effect that is accorded the findings of a trial court, and it is the duty of the court making the appointment to examine the whole record and reach its own conclusion as to the facts (State, ex rel., v. Harvey, 148 Kan. 166, 167, 80 P. 2d 1095; State, ex rel., v. Buchanan, 142 Kan. 515, 51 P. 2d 5; State, ex rel., v. Burr, 151 Kan. 383, 385, 99 P. 2d 742; State, ex rel., v. McKnaught, 152 Kan. 689, 690, 107 P. 2d 693; State, ex rel., v. Duncan, 134 Kan. 85, 4 P. 2d 443, also 39 C. J. S. 682, § 101).

Mindful of this rule we have carefully examined the record. In substance the evidence adduced by petitioner can thus be stated: Testifying as a witness in his own behalf he stated that following his conviction he had intended to appeal his case to the supreme court, but was prevented from doing so by the late J. K. Codding, then warden of the Kansas penitentiary. He further stated that after he was received at the prison the warden inquired of him if he intended to appeal, that when he replied in the affirmative he was told there would be no appeal and that such official immediately

had him confined in cell house No. 2, for the express purpose of preventing him from taking that action and kept him there for two years, four months and ten days, during which time he was neither allowed to write letters nor receive visitors. When given the opportunity to state any other facts he deemed important he volunteered the information that while he was in the penitentiary awaiting trial the warden had him beaten up by bringing around twelve prisoners for the purpose of accomplishing that result. Later he admitted the only thing the warden had against him was that he had been a former inmate of the prison. On cross-examination he admitted he had made no effort to appeal during the six weeks following his conviction while he was confined in the Wyandotte county jail. In response to questions as to how the general reputation of the warden as a prison official was regarded he replied he was all right, seemed to know his business, was not what you would call a right strict disciplinarian, and was a swell fellow in a lot of ways.

Four other witnesses were called by petitioner and testified. The only portion of his testimony which was corroborated by any one of them was the fact he was confined in cell house No. 2 for a long time after he was received at the prison under his present commitment. One of such witnesses stated he knew why he was put there, and in response to a question by petitioner's counsel as to the reason answered it was because conditions were such prison officials were afraid of some bodily harm to Bissell and that he was kept there for his own protection. On cross-examination this same witness stated that by the statement made by him on direct examination he meant petitioner was so confined for his own protection against other inmates.

We believe what has just been related to be a fair summary of the material evidence offered by the petitioner.

As for the state it could not subpoena Warden Codding as a witness because he was deceased. The only evidence it produced came from the lips of Robert H. Hudspeth, the present warden of the penitentiary, who was record clerk of that institution from 1916 to 1919. This witness stated Warden Codding was an advocate of reform and rehabilitation of prisoners, was exceptionally lenient in his treatment of them, and that during his association with him he knew of no instance where he ever denied any prisoner any right or privilege to which he was entitled. On cross-examination in reply to a question propounded to him by petitioner's counsel as to why

his client was confined in cell house No. 2, he answered that there was quite a wave of indignation throughout the institution over the report in the newspapers of petitioner's testimony in his confession of the crime and that he was placed there to keep other inmates from attacking him. In answer to interrogations by the commissioner he testified that Warden Codding was a reformer and that from his knowledge and asssociation with him it was his opinion he was more apt to demand an inmate's rights than he was to deny them.

In our consideration of the evidence it is well to keep in mind that in habeas corpus cases, where an accused attacks a judgment on the ground he was denied counsel in violation of his constitutional rights, this court, as well as others, has repeatedly held that the burden of proof rests upon him who seeks to establish such violation to prove by a preponderance of all the testimony that he did not have counsel to represent him. (See *Brewer v. Amrine,* 155 Kan. 525, 529, 127 P. 2d 477; *Bradley v. Amrine,* 157 Kan. 451, 141 P. 2d 380; *Johnson v. Zerbst,* 304 U. S. 458, 82 L. Ed. 1461; *Norris v. Hudspeth,* 114 F. 2d 1007; *Amrine v. Tines,* 131 F. 2d 827; *Odom v. Aderhold,* 115 F. 2d 202; *Macomber v. Hudspeth,* 115 F. 2d 114; *Bugg v. Hudspeth,* 113 F. 2d 260; *Blood v. Hudspeth,* 113 F. 2d 470; *Leonard v. Hudspeth,* 112 F. 2d 121; *Creel v. Hudspeth,* 110 F. 2d 762; *Pers v. Hudspeth,* 110 F. 2d 812; *Towne v. Hudspeth,* 108 F. 2d 676; *Moore v. Aderhold,* 108 F. 2d 729; *McCoy v. Hudspeth,* 106 F. 2d 810; *Wilson v. Hudspeth,* 106 F. 2d 812; *Nivens v. Hudspeth,* 105 F. 2d 756 and *Zahn v. Hudspeth,* 102 F. 2d 759.)

Several of the decisions just cited expressly state (see *Johnson v. Zerbst,* supra; *Zahn v. Hudspeth,* supra; *Macomber v. Hudspeth,* supra) and all of them recognize the principle that a judgment of conviction bears a presumption of validity and regularity and cannot be lightly set aside by collateral attack on habeas corpus. This court is also committed to that doctrine (see *Engels v. Amrine,* 155 Kan. 385, 125 P. 2d 379).

Thus, in dealing with the subject to which we have just referred at page 116 of the opinion in *Macomber v. Hudspeth,* supra, the court said:

"The judgment is presumed to be correct and may not be lightly set aside; and the heavy burden rests upon petitioners in a habeas corpus case of this kind to show by a clear and convincing preponderance of evidence that they did not waive their right to counsel in the manner indicated above but were denied such right."

Although the proposition has not heretofore been expressly passed on by us in a habeas corpus proceeding, so far as it affects the burden of proof, we can see no material distinction in the situation of an individual who seeks to set aside a judgment of conviction on the ground his constitutional right to counsel has been violated and one who in effect seeks to do away with the force and effect of a judgment of conviction on the ground he had been deprived of the right of appeal in violation of the equal protection clause of the fourteenth amendment to the constitution. We therefore conclude that the petitioner here had the burden of showing by a clear and convincing preponderance of evidence that he was deprived of his right to appeal in order to entitle him to his release in the proceeding instituted by him.

By a similar process of reasoning we conclude our deliberation should proceed on the hypothesis the judgment of conviction was regular and should not be lightly set aside in this, a collateral proceeding.

Another presumption, particularly applicable here since the pleadings contain allegations regarding action on the part of Warden Codding which, if true, all must concede would constitute misconduct, in which we are not only entitled to indulge but required to recognize, is that the acts of administrative officers within the line of their official duties, are presumed to have been regularly, properly and legally performed. (*Bennett v. Corporation Commission,* 157 Kan. 589, 597, 142 P. 2d 810 and *State Corporation Commission of Kansas v. Wall,* 113 F. 2d 877.)

We turn now to the construction to be placed upon the evidence. In so doing we are mindful of the well-established rule, announced by us on many occasions, that a court is not required to believe the testimony of a witness merely because there is no direct evidence to contradict it (see *Bradley v. Amrine,* 157 Kan. 451, 456, 141 P. 2d 380 and cases there cited).

While it is true petitioner definitely testified that Warden Codding frustrated all his efforts to appeal, there are other facts and circumstances which, when given consideration, appear to refute his statements in that respect. Briefly related they are: Direct contradiction by several witnesses of his claim he was placed in cell house No. 2 by Warden Codding for the express purpose of preventing him from taking an appeal and positive testimony he was placed there not on that account but to protect his own personal

safety; admitted failure to make any effort to appeal during the period of several weeks he was confined in the Wyandotte county jail; lack of action in making any claim relating to deprivation of his right to appeal for more than twenty-five years and until long after the lips of the only witness who could refute his charges had been sealed by death; total absence of corroboration on all material facts relied upon except the one that he was confined in cell house No. 2; the general reputation of Warden Codding as an advocate of reform and rehabilitation of prisoners as related by witnesses and in fact inferentially admitted by petitioner himself; the absurdity and falsity of his voluntary statement that while he was waiting trial Warden Codding had caused him to be beaten up by a group of prisoners. Other facts and circumstances could be detailed, but we deem these sufficient and it would serve no useful purpose to relate them.

When all the evidence is reviewed and carefully considered in the light of the applicable principle of law to which we have heretofore referred we are impelled to the conclusion it is not only apparent petitioner failed to sustain the burden of proof by a clear and convincing preponderance of the evidence, but evident that he was not deprived of a right to appeal as claimed by him. Whether his contentions in that respect are predicated upon deliberate falsification or based upon a mistaken conception of what he now believes the facts to be after years of brooding over methods of avoiding continuous confinement, we are not prepared to say. In either event the result must be the same.

The writ is denied.

BURCH, J., not participating.