No. 37,822

THE STATE OF KANSAS, ex rel., HAROLD R. FATZER, Attorney General, *Plaintiff,* v. VERNON C. AXTON, Mayor of the City of Parsons, *Defendant.*

(216 P. 2d 784)

Opinion filed April 8, 1950.

*Harold R. Fatzer,* attorney general, and *Theo. F. Varner,* assistant attorney general, both argued the cause, and *Willis H. McQueary,* assistant attorney

general, and *J. Logan Shuss,* county attorney, were with them on the briefs for the plaintiff.

*Oren Gray,* of Parsons, and *Edward Rooney,* of Topeka, both argued the cause, and *Jacob Dickinson* and *David Prager,* both of Topeka, were with them on the briefs for the defendant.

The opinion of the court was delivered by

PARKER, J.: This is an original proceeding in quo warranto to oust Vernon C. Axton from the office of mayor of the city of Parsons, Kan. It was instituted in the name of the state on the relation of the attorney general under the provisions of G. S. 1935, 60-1609 *et seq.,* providing for the forfeiture of a public official's office for willful misconduct or willful neglect to perform duties enjoined upon him as such an official by the laws of the state. Portions of the statute, authorizing the institution and maintenance of the proceeding and material to the issues involved, read as follows:

"Every person holding any office of trust or profit, under and by virtue of any of the laws of the state of Kansas, either state, district, county, township or city office, who shall willfully misconduct himself in office, or who shall willfully neglect to perform any duty enjoined upon such officer by any of the laws of the state of Kansas, . . . shall forfeit his office and shall be ousted from such office in the manner hereinafter provided."

Defendant was first elected mayor of the city of Parsons in April, 1947, for a two-year term. He was reëlected in April, 1949, and was serving his second term as mayor on the date of the commencement of this proceeding.

The petition, filed on July 6, 1949, contains two causes of action and details at length the acts and conduct on which the state bases its right to oust the defendant from office. For our purposes the substance of what is therein set forth is all that is required and that can be briefly summarized.

The first cause of action charges the defendant with willfully neglecting to perform the duties of suppressing gambling and other laws of the state in the city of Parsons and alleges that during his first term of office he entered into a conspiracy with his brother, Ray Axton, and his brother's partner, Lee Weekly, to set up and operate gambling devices in that city with the understanding that he was to insure them that the Parsons police department would not molest the operation of such devices and that he would participate in their earnings when they were set up and in operation. It then charges that the conspiracy continued during the mayor's second term of office, that during such term he actively assisted in

carrying out its purposes, and that as a result he not only failed to suppress gambling in the city, as was his duty, but willfully misconducted himself in office.

In its second cause of action the state alleges that during the defendant's first term as mayor the chief of police, Frank A. Williams, was using his office as chief of police to extort payments of money from various individuals in the city of Parsons, who were engaged in gambling and other violations of law, with defendant's knowledge and assent but nevertheless he reappointed Williams to that position after being reëlected in April, 1949. Further allegations are to the effect that thereafter, and during his second term, the defendant failed, neglected, and refused to discharge such officer even though the latter's unlawful activities continued and were specifically called to his attention.

On July 6, 1949, the plaintiff made application for the appointment of a commissioner to take evidence and make suggested findings of fact and conclusions of law. The next day it applied for an order suspending the defendant from office during the pendency of the action. The application for suspension was resisted by the defendant and set down for hearing. After it had been presented and considered this court decided it would be in the public interest to grant an order of suspension and an order was made accordingly. In that order it indicated that upon the filing of an answer by the defendant a commissioner would be appointed to take evidence as to the truth and falsity of the charges filed by the state and to make findings of fact and conclusions of law as it had theretofore requested.

Some two weeks later the defendant filed his answer. When analyzed the sum and substance of its allegations amount to a general denial of the charges made by the plaintiff and a claim that defendant had at all times conducted himself in office as a faithful public official.

The court then gave consideration to the appointment of a commissioner and appointed Hon. J. G. Somers of Newton, a capable attorney and a former district judge of long experience, as its commissioner to hear the evidence, make findings of fact and conclusions of law, and report to the court. At a prolonged hearing in the city of Parsons the commissioner took the testimony. Thereafter he made findings of fact and conclusions of law which have now been returned by him together with his report. Such findings and conclusions read:

"FINDINGS OF FACT

"1. The City of Parsons, Kansas is a city of the first class, governed by a commission of three members. Vernon C. Axton was elected Mayor of the city and qualified and served from April 16, 1947, until he was suspended by this court on July 16, 1949, having been re-elected in April, 1949. In April, 1947 and again in April, 1949, Frank A. Williams, upon the motion of Vernon C. Axton, as Mayor, was appointed Chief of Police of Parsons, by the Board of Commissioners and served as such until he was dismissed by action of the board on July 7, 1949 at a meeting called for the purpose of accepting his resignation. He refused to resign and upon motion of Commissioner Koontz, seconded by Commissioner Minton, which motion was carried unanimously, Williams was discharged. The mayor did not attend the meeting, although notified in advance that the meeting would be held.

"2. Ray G. Axton, a brother of Vernon C. Axton, and prior to May, 1949, a resident of New Orleans and Jennings, Louisiana, was the owner of a one-half interest in the Packard Distributing Company, a Louisiana corporation, organized for the purpose of sale and distribution of coin operated devices. The Packard Distributing Company as a corporation was a partner with one Lee Weekley, the partnership operating under the name of Lee Amusement Company. This partnership operated slot machines and other coin operated devices in and around Crowley, Louisiana, prior to May 16, 1949.

"3. In November and December, 1948, Vernon C. Axton called his brother, Ray Axton, on long distance at Crowley, Louisiana, twice and at Jennings, Louisiana, once. In January, 1949, he called Lee Weekley at Crowley, Louisiana, once. Someone from the same phone number in Crowley, over which Vernon C. Axton had talked to both his brother and Lee Weekley, called Vernon C. Axton once during that time. Vernon Axton made at least one trip to Jennings, Louisiana in November, 1948, and saw his brother, Ray. On December 17, 1948, Lee Weekley came to Parsons and placed in operation a slot machine in the Twentieth Century Grill owned by Leona Claggett. On December 21, 1948, a lieutenant on the Parsons police force, Jerold W. Mc-Mullen, about 4:00 p. m., secured a search warrant for the Twentieth Century Grill, and told Frank A. Williams, Chief of Police, he had a warrant to search and seize a slot machine at that place, and that he was on his way then to get the machine.

"After the lieutenant left the police station enroute to the Twentieth Century Grill, the desk man at police headquarters, by radio directed the lieutenant to call the mayor on the telephone, which the lieutenant did. The mayor told him over the phone to 'hold up on it for a while', and the warrant was never served. Lee Weekley removed the machine that day or the next.

"4. Vernon C. Axton, aside from his duties as mayor, was engaged in the real estate business. He had listed by the owner, Virgil Siesser, a building at 21st and Briggs Streets in the city of Parsons, Kansas. The night of December 20, 1948, some mysterious person called Ruben Powell, an employee of the Parsons Park Department, who had been appointed such by Vernon C. Axton, and told him, Powell, to bring a hammer and nails to the building at 21st and Briggs, which Powell did. On arriving there, some other person, a stranger to Powell, and who was sitting in a car bearing a Louisiana license plate, di-

rected Powell to nail paper over all of the windows of the building. Powell did this. About 4:00 a.m., a big motor van bearing Louisiana license plates unloaded a number of music boxes, pin-ball machines, one-ball machines, and 'one-arm bandits.' About this time the mystery man paid one month's rent to Virgil Siesser, who was also present and stated he, the stranger, represented Lee Weekley, and that Lee Weekley would pick up the rent receipt. No one identified this stranger, but Ray Axton, the mayor's brother, was in Parsons on that date, and this strange man answered Ray Axton's description. Lee Weekley later got the rent receipt. Coin operated machines, including slot machines of the 'one-armed bandit' type were stored here from December 21 until April 1st, different numbers, types and machines at different times; it was not 'dead storage'. The rent on this building for the following period, January 20, 1949 to February 20, 1949, was paid by Vernon C. Axton. The rent from then to April 1, when the building was vacated, was paid by Howard Hammett, at the request of Vernon C. Axton, who later reimbursed Hammett. At the time Axton requested Hammett to make the payment, Axton stated, 'It might look a little better,' and also told Hammett that there were some machines in the building which fact Hammett later verified, finding pin-ball, one-ball, consoles and parts of a 'one-armed bandit.' When the machines were moved from 21st and Briggs to the Virgil Siesser farm on April 1, Hammett arranged with the transfer company for their removal, paid the costs, $16.00, and was reimbursed by Vernon C. Axton therefor. The machines were moved because the building was then sold and a new owner wanted possession. Neither Powell, Siesser, nor Hammett were particularly coöperative witnesses.

"5. On March 23, 1949, Lee Weekley called Mayor Vernon Axton twice on the telephone from Crowley, Louisiana, and on April 6, Weekley again called Vernon Axton twice. On May 16, 1949, Lee Weekley returned to Parsons, registering at a hotel. His announced purpose was to set up and operate slot machines and other coin operated machines. He gave assurances that everything was all right, and there would be no police interference. About the same time, Ray Axton moved to Coffeyville, Kansas and assisted Lee Weekley in setting up machines in Parsons. At least one machine was then placed in operation at the Twentieth Century Grill, operated by Leona Claggett, Weekley telling her everything was all right. At 12:30 a.m., May 23, 1949, during the absence from the city of Chief of Police Williams, the police and a deputy sheriff found the machine in operation, picked up the machine, and arrested Leona Claggett. Charlotte Claggett, a daughter, immediately called Lee Weekly at the Matthewson Hotel in Parsons, and told him what had happened. Fifteen or twenty minutes later, Weekley called her and said everything was all right, and she then went to the police station, got her mother and took her home. A few minutes after Leona Claggett was brought to the police station, under arrest, Mayor Axton called the commanding officer at the police station, and directed that Mrs. Claggett be released without bond, which was done. Before 9 o'clock that morning when the case was to have been tried, the mayor directed that it be continued until the next day, May 24. Chief of Police Williams returned to Parsons sometime the night of May 23-24, and saw the mayor about 8:30 the morning of May 24 at the mayor's office, where the mayor gave him, Williams, his, the mayor's personal check for $28.00. This check was taken by the chief of police immediately to the Kalchner Serv-

ice Station in the 2300 block on West Main Street and cashed. The chief of police then deposited $50.00 in cash with the police judge as bond for Leona Claggett. Lee Weekley, meanwhile that morning, had telephoned Mrs. Claggett that she need not appear in police court 'that everything had been taken care of'.

"6. On May 25, 1949, a conference was held between Glenn Jones, City Attorney, Roy Woods, and Louis Wallen, two friends and supporters of the mayor, Clyde Reed, Jr., Editor of the Parsons Sun, and Mayor Axton. This conference was occasioned by some extremely bad publicity appearing in the Parsons Sun the night before. Publicity adverse to the mayor, the chief of police, and the city administration. At this meeting both the mayor and the chief of police tendered their written resignations, later that day withdrawn before acceptance. On that day, Ray Axton telephoned from Coffeyville to his brother, Vernon Axton, at his home, and they met in Cherryvale, Kansas. At 11:57 p. m., Vernon Axton telephoned from his home to his brother in Coffeyville. The next day, May 26, Ray Axton in Coffeyville, telephoned Lee Weekley in Crowley, Louisiana, and Lee Weekley telephoned Ray Axton at Coffeyville. Vernon Axton, from his residence in Parsons, telephoned his brother, Ray, in Coffeyville, at 8:30 that night. At 7:14 p. m., the next day, May 27, Vernon Axton, from his home in Parsons, telephoned his brother in Coffeyville, and at 7:25 p. m., his brother telephoned Vernon. May 28, at 6:52 p. m., Vernon Axton, from his home, telephoned Ray in Coffeyville, and on May 29, at 7:51 a. m., Lee Weekley, from Crowley, telephoned Ray Axton at Coffeyville. May 30 at 12:08 p. m., Lee Weekly again talked long distance with Ray Axton in Coffeyville, and Ray then telephoned some person in New Orleans at University No. 1020, and Vernon Axton talked from his office in Parsons to his brother in Coffeyville at 7:40 p. m. From then on Vernon and Ray were in almost daily communication with each other until shortly before the hearing. Lee Weekley talked long distance from Crowley, Louisiana to Ray Axton in Coffeyville on June 2, June 7 and June 12, and the two brothers talked to each other over long distance on each of these days. Later, July 26, Vernon Axton with Ray Axton went to Pryor, Oklahoma, for the purpose of finding storage space for the machines then in custody of the Labette County Sheriff, and Vernon Axton was present when Ray stated that he represented Lee Weekley, and Vernon Axton knew that Ray then had a written order from Weekley for the machines.

"7. Sometime in November or December, 1948, the respondent, Vernon C. Axton, entered into a conspiracy with his brother, Ray Axton, and Lee Weekley, whereby the latter two would set up slot machines in Parsons, Kansas, and Vernon C. Axton would insure that the police of the city would not molest the operation of the slot machines. This conspiracy was entered into during the respondent's first term of office, but was carried over and put into effect in the present term of office of the respondent.

"8. Frank A. Williams, Chief of Police of Parsons, Kansas during the year 1948, was demanding, extorting and receiving various sums of money from diverse persons in the city of Parsons, Kansas for permission to. conduct unlawful poker games, operate unlawful gambling devices, unlawful sale of intoxicating liquors, and that Vernon C. Axton, knowing of the corrupt acts of

Frank A. Williams, Chief of Police, reappointed him to that office and refused to discharge him when proof of such corruptness was called to his attention.

## "CONCLUSIONS OF LAW.

"1. That Vernon C. Axton willfully misconducted himself in the office of Mayor of the City of Parsons, Kansas;

"*a*. In that he was neither active nor vigilant in enforcing the laws and ordinances for the government of the city of Parsons, Kansas as required by G. S. 1935, 13-2010 and 13-1808, particularly those ordinances prohibiting slot machines and other gambling devices.

"*b*. In that during his first term of office as mayor, he entered into an agreement or understanding with one Lee Weekley and one Ray Axton by which he was to receive a prospective pecuniary advantage in exchange for his wrongful failure to enforce certain ordinances of the city of Parsons, particularly those ordinances prohibiting slot machines and other gambling devices.

"*c*. In that during his present term of office as mayor of the city of Parsons, Kansas,· he has willfully and neglected to perform duties enjoined upon him by the laws of the State of Kansas, particularly in failing to enforce the ordinances of the City of Parsons prohibiting slot machines and other gambling devices.

"2. That the. willful misconduct both malfeasance and misfeasance of Vernon C. Axton, Mayor of the City of Parsons, Kansas, forfeited his right to that office, and he should be permanently removed therefrom.

"3. That the costs of this action should be assessed against the Respondent."

Following action by the commissioner, as heretofore related, the plaintiff filed a motion asking this court to confirm and adopt the report filed by the commissioner and for a judgment permanently ousting the defendant as mayor of the city of Parsons. The defendant filed a motion asking that the special findings of the commissioner be disregarded as contrary to the evidence and for a judgment on the evidence and the law finding him not guilty of the charges made against him. Thereafter the parties abstracted the evidence and presented the cause by briefs and oral arguments.

Thus it becomes the duty of this court to determine whether the defendant shall be ousted from office. In *State, ex rel., v. Buchanan,* 142 Kan. 515, 51 P. 2d 5, we held:

"In an action in quo warranto to oust defendant from the office of city commissioner where the court appoints a commissioner to hear evidence and make findings of fact and conclusions of law and the commissioner makes his report, the findings of the commissioner are advisory only and it is the duty of this court to examine the entire record and reach its own conclusions as to the facts." (Syl. ¶ 1.)

See, also, *Bissell v. Amrine,* 159 Kan. 358, 362, 155 P. 2d 413, and cases there cited, where the foregoing case is cited with approval and

it is said the rule therein announced applies to all original actions.

Assuming, without for the moment deciding, the evidence supports the commissioner's findings of fact we are disposed to first consider two legal questions raised by the defendant.

It is first urged that the facts found by the commissioner do not warrant a judgment of ouster as a matter of law. Let us see. Resort to the provisions of G. S. 1935, 60-1609, heretofore quoted, makes it clear that any public official who is guilty of willful misconduct in office or who willfully neglects to perform any duty enjoined upon him by the laws of the state forfeits his office and in a proper proceeding may be ousted from office.

G. S. 1935, 13-1808, reads as follows:

"The mayor shall be ex officio, the 'commissioner of the police and fire departments', and shall have under his special charge, and be responsible for, the enforcement of all city ordinances and police regulations of such city, and have general supervision over the police and fire departments. . . ."

G. S. 1935, 13-2010, provides:

"The mayor shall be active and vigilant in enforcing all laws and ordinances for the government of the city, and he shall cause all subordinate officers to be dealt with promptly for any neglect or violation of duty . . ."

G. S. 1935, 13-2001, reads:

"The mayor shall preside at all meetings of the board of commissioners, except as herein otherwise provided. He shall be the chief executive officer of said city, and shall have general supervision and control of all other officers, departments and affairs of the government of such city, and shall take care that the provisions of this act and all ordinances of such city are complied with."

By reason of the foregoing sections of the statute it becomes equally clear the defendant as mayor of the city of Parsons had the duty of enforcing all ordinances of the city, including those prohibiting gambling and the operation of slot machines and other gambling devices, that he was required to be active and vigilant in enforcing all laws and ordinances for the government of such city and that he had the additional duty of causing all its subordinate officers, including the chief of police, to be dealt with promptly for any neglect or violation of their official duties. A mere reading of the findings compels a conclusion the commissioner believed and found the defendant had failed to perform the particular duties to which we have heretofore referred. It necessarily follows the contention that such findings, if approved, are not sufficient

as a matter of law to warrant a judgment ousting defendant from office is not tenable.

Next it is claimed the attorney general was induced to institute the instant proceedings by disgruntled political enemies of the defendant who had just been returned to the office of mayor after a heated election contest. It is suggested the motive of these informants in reporting law enforcement conditions in the city of Parsons should be given consideration by us while weighing the evidence and in reaching a conclusion as to the defendant's misfeasance and/or malfeasance. This claim has no merit. It is, of course, entirely conceivable that initial information causing investigation and ultimate proceedings against a derelict public official may be prompted by malice or even be false and yet the investigation disclose irregularities warranting the proceeding and evidence which, when produced at the trial, will not only justify but compel a judgment against him. For that reason, we are not concerned with whether the information upon which the chief law enforcement officer of the state saw fit to act came from sinister or propitious sources. He did act and our sole province is to determine whether the evidence adduced at the hearing and now under review supports his claim the defendant should be ousted from office.

There remains only the question whether the commissioner's findings are to be approved. This, as we have heretofore indicated, requires a review of the record. Defendant's position on the point is that the state failed to meet the burden of proof, not that the findings are entirely unsupported by evidence. No useful purpose would be served and it certainly would do the defendant no kindness to point out and spread upon our records portions of the testimony deemed by us to be convincing and decisive. It suffices to say the court has made a painstaking examination of the evidence taken by the commissioner and has concluded that with one possible exception it amply supports his findings and recommendations. The exception to which we refer is that portion of Finding 8 to the effect the defendant refused to discharge the chief of police when proof of that official's corruptness was called to his attention. Perhaps it would be more accurate if the commissioner had used the verb "failed" instead of "refused." However, that makes no difference in the result. We therefore find the commissioner's report should be approved and confirmed and that judgment should be rendered ousting the defendant from the office of mayor.

It is so ordered.